**THE LAW FIRM OF PETER STROJNIK**
ATTORNEYS AT LAW
SUITE 1401
3030 North Central Avenue
Phoenix, Arizona 85012
(602) 297-3019

Peter Kristofer Strojnik AZBN 026082 CABN 242728
pksesq@aol.com
Attorney for Plaintiffs

### IN THE UNITED STATES DISTRICT COURT

### DISTRICT OF ARIZONA

| | |
|---|---|
| PETER STROJNIK, P.C., an Arizona Corporation; PETER STROJNIK, an individual, <br><br> Plaintiffs, <br><br> vs. <br><br> HEART TRONICS, INC., a Delaware Corporation f/k/a Singalife, Inc.; JOSEPH C. MAHER, II, an individual d/b/a THE LAW OFFICES OF JOSEPH C. MAHER; RICHARDSON & PATEL, LLP, a California limited liability partnership; LUAN KINH PHAN, an individual; DAVID ZEV RIBAKOFF, an individual; ABC DEFENDANTS 1-50, <br><br> Defendants. | NO.  2:09-cv-128-PHX-FJM <br><br> **FIRST AMENDED COMPLAINT** <br><br> JURY TRIAL REQUESTED |

Plaintiffs allege as follows:

### PARTIES, JURISDICTION AND VENUE

1) Plaintiff Peter Strojnik, P.C. is an Arizona professional corporation authorized to and conducting business in Maricopa County, State of Arizona.

2) Plaintiff Peter Strojnik is an individual residing in Maricopa County, State of Arizona.

3) Defendant Heart Tronics, Inc. is a Delaware corporation with its principal place of business in Studio City, California. Heart Tronics is formerly known as Signalife, Inc., and was so named and incorporated at the time of the events giving rise to this action.

4) Defendant Joseph Cyril Maher, II is an attorney at law residing in and practicing law in the State of California. Maher does business as the Law Offices of Joseph C. Maher.

5) Defendant Richardson & Patel, LLP is a California limited liability partnership practicing law in Los Angeles, California. Defendants Luan Phan and David Ribakoff were employed by Richardson Patel at the time of the events giving rise to this action.

6) Defendant Luan Kinh Phan is an attorney residing in and practicing law in the State of California.

7) Defendant David Zev Ribakoff is an attorney residing in and practicing law in the State of California.

8) ABC Defendants 1-50 are the persons and/or entities whose identities are unknown to Plaintiff, but did in fact cause damages to Plaintiffs and conspired with the named Defendants in causing said damage.

9) This Court has personal jurisdiction over Defendants by virtue of the following facts:

   a. Defendants caused a lawsuit to be filed against Plaintiffs and served on Plaintiffs in the State of Arizona;

   b. The State of Arizona has an interest in providing a forum for its residents, including the Plaintiffs;

   c. It would be extremely burdensome for Plaintiff to access another forum;

    d. Defendants purposefully availed themselves of the economic benefits and resources of the State of Arizona in conducting their business here by, inter alia, serving process in the State of Arizona and suing an Arizona resident;

    e. Defendants may be hailed into court here under the liberal effects test in this tort action;

    f. Defendants did and should have foreseen being hailed into court in the State of Arizona.

10) This Court has original jurisdiction.  Complete diversity exists pursuant to 28 U.S.C. § 1332 as all Plaintiffs reside or are incorporated in Arizona, and all Defendants reside in or are incorporated in California.

11) The venue is proper in this District.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

12) Plaintiffs reallege all allegations heretofore set forth.

13) On or about November 10, 2008, Signalife, Inc. changed its name to Heart Tronics, Inc.

14) On February 14, 2008, Strojnik PC received an unsolicited facsimile advertisement promoting Signalife stock (Exhibit 1).  At the time of receipt of the Fax, Signalife stock − SGN − was trading on the American Stock Exchange.  Signalife was delisted from AMEX in early September 2008, and now trades on the Over the Counter Bulletin Board and Pink Sheets under the ticker symbols SGNX and SGAL.

15) Strojnik conducted investigation and research into the identity of the sender of the Fax.  In an attempt at discovery, on May 28, 2008, Strojnik sent a letter to Signalife requesting

information concerning the Fax and attempting to resolve what Strojnik believed was a controversy between Signalife and Strojnik PC (the "Letter") (Exhibit 2).

16) Signalife did not respond to the Letter. Instead, on June 12, 2008, Signalife filed a Complaint for Declaratory Relief against Strojnik and Strojnik PC ("Complaint") (Exhibit 3). The Complaint was filed in Los Angeles County Superior Court, Cause No. BC392638 ("LA matter"). Signalife promptly and personally served the Complaint on Strojnik and Strojnik PC at Plaintiffs' law office in Phoenix.

17) The Complaint sought declaratory relief from the Court decreeing Signalife was not responsible for sending the Fax.

18) At the time Signalife filed the Complaint, it and its agents knew that Strojnik was an Arizona resident, Strojnik PC was an Arizona corporation with its office in Phoenix, and that Plaintiffs did not have minimum contacts with the State of California such that no California court could exercise personal jurisdiction over them.

19) Prior to filing the Complaint, Signalife or its agents did not research Plaintiffs to determine whether they had sufficient contacts with California.

20) Prior to filing the Complaint, Signalife or its agents did not conduct the legal research to discover whether the type of letter Strojnik sent to Signalife was sufficient under specific jurisdiction federal and state tests.

21) On June 20, 2008, Strojnik engaged the services of his son, Peter K. Strojnik ("Junior Strojnik"), who is licensed to practice law in California, to defend Strojnik and Strojnik PC in the LA matter. Junior Strojnik and Strojnik entered into an Agreement whereby

Strojnik would pay Junior Strojnik $350.00 per hour for the latter's defense of Strojnik and Strojnik PC.

22) On June 23, 2008, after conducting research on personal jurisdiction law and after conferencing with Strojnik, Junior Strojnik prepared a three-page letter addressed to Phan, attorney for Signalife, in which Junior Strojnik related Strojnik's lack of contacts with California and set forth multiple cases stating that a single letter does not give a Court personal jurisdiction over Strojnik and Strojnik PC (the "6-23-08 Letter") (Exhibit 4). The 6-23-08 Letter had attached the Declaration of Strojnik relating to his lack of contacts with California. The purpose of the 6-23-08 Letter was to request Signalife to dismiss the LA matter.

23) As of June 23, 2008, Signalife and its agents knew that Junior Strojnik had a similar name to Strojnik except that Junior Strojnik has a middle initial – "K".

24) Phan and Ribakoff, attorneys for Signalife and employed by Richardson & Patel, did not respond to the 6-23-08 Letter. Consequently, Junior Strojnik, on behalf of Strojnik and Strojnik PC, prepared, filed and served a Motion to Quash Service of Summons on July 11, 2008 on Signalife and its attorneys.

25) In response to the Motion to Quash, Phan, Ribakoff, and Richardson & Patel, filed an Ex Parte Application requesting a 75-day continuance of the August 8, 2008 hearing date on the Motion to Quash (Exhibit 5). The Motion to Quash hearing was set for July 17, 2008.

26) The factual basis for the Ex Parte Application was as follows:

a. That Strojnik had resided and/or owned property in California, which was based on a Westlaw "People Finder Historic Tracker Record." The Record had three entries:

    i. **Entry 1**

| | |
|---|---|
| Name: | Pete Stronjnik [sic] |
| Also known as: | Strojnik, Peter K |
| SSN: | 601-07-xxxx |
| On file since: | 10/01/1998 |
| Current address: | 590 Lafayette St<br>Santa Clara, Ca 95050-4914 |

    ii. **Entry 2**

| | |
|---|---|
| Head of household: | Mr Peter Strojnik |
| Marital status: | Single |
| Address: | 152 N 3rd St<br>San Jose, Ca 95112-5560 |
| Telephone: | 408-297-5300 |

    iii. **Entry 3**

| | |
|---|---|
| Name: | Peter K Strojnik |
| Also known as: | Strojnik, Peter |
| SSN: | 526-13-xxxx |
| Current address: | 3030 N Central Av 1500<br>Phoenix, Az 85012-2750 |

27) At the time of the Ex Parte request, Signalife and its agents knew that Junior Strojnik had a similar name to Strojnik. Junior Strojnik explained to the Court and all parties at the Ex Parte request that the California addresses set forth above belonged to him, and not Strojnik.

28) At the time of the Ex Parte request, Signalife and its agents knew that Junior Strojnik's social security number was 601-07-xxxx and Strojnik's social security number was 526-13-xxxx.

29) Prior to the Ex Parte request, Signalife or its agents did not call the telephone number in Entry 2 above. Had they done so, they would have known that California phone number belonged to Junior Strojnik's old Bay Area law firm. Junior Strojnik advised all interested parties that was the case.

30) At the Ex Parte hearing, Junior Strojnik advised the Court that it was he who had lived in California when he attended undergraduate school there. Junior Strojnik also offered Ribakoff the opportunity to depose Strojnik the next day. Ribakoff declined in open court.

31) The Court partially granted the Ex Parte request by permitting Signalife and its agents to conduct jurisdictional discovery. The Court ordered the parties to appear for the Motion to Quash hearing on September 22, 2008.

32) At the Ex Parte hearing, the Court stated the following paraphrased language concerning the Complaint:

   a. "Why are we here?"

   b. "…rethink whether this case oughtta go forward."

    c. "If you don't come up with anything, maybe you oughtta dismiss this case."

    d. I want work that is necessary, not unnecessary work."

    e. I foresee a motion that would require Signalife to pay substantial attorneys fees."

33) Approximately 30 minutes following the hearing, Junior Strojnik faxed a letter to Ribakoff and Phan requesting Signalife dismiss the Complaint. They did not respond.

34) Between the Ex Parte hearing and the 9-22-08 Motion to Quash hearing, Signalife or its agents did not depose Strojnik even though Strojnik offered to be deposed several times. Signalife or its agents never deposed Strojnik.

35) On or about September 3, 2008, Signalife substituted Richardson & Patel, Phan and Ribakoff with Joseph C. Maher, II.

36) On or about September 5, 2008, Maher sent to Strojnik a Notice of Deposition set for September 26, 2008, which was a date four days after the Motion to Quash hearing.

37) In response to the Notice of Deposition, Junior Strojnik offered Maher to depose Strojnik on September 17, 18, 19, 20 or 21, 2008 (Exhibit 6). Maher never responded.

38) On the morning of the 9-22-08 Motion to Quash hearing, Signalife, through its agent Maher, moved to disqualify the presiding judge (Exhibit 7). Consequently, the Court was forced to continue the Motion to Quash hearing until October 16, 2008.

39) On September 22, 2008, Maher emailed Junior Strojnik advising that he would no longer take Strojnik's deposition that had been scheduled for September 26, 2008. Maher never intended to depose Strojnik.

40) Between September 22, 2008 and the 10-16-08 Motion to Quash hearing, Signalife or its agents never deposed Strojnik or ever had intention to do so.

41) At the 10-16-08 Motion to Quash hearing, Siganlife or its agents did not appear. The Motion was granted, and a Notice of Ruling was prepared and filed (Exhibit 8).

42) On October 21, 2008, Maher called Junior Strojnik and asked whether a Complaint concerning the Fax had been filed yet. Maher also asked when the Court had granted the Motion to Quash and inquired as to when the Court scheduled the hearing.

43) Maher and Signalife knew there was a hearing, but intentionally failed to appear.

## COUNT ONE
(Abuse of Process against All Defendants)

44) Plaintiffs reallege all allegations heretofore set forth.

45) Defendants engaged in a willful acts in the use of the judicial process.

46) Defendants engaged in the willful acts in the use of the judicial process for an ulterior motive not proper in the regular conduct of the proceedings.

47) As a proximate result of Defendants' acts, Plaintiffs have suffered harm and attorneys' fees for the sum of $22,000.00 and loss of time, pain, suffering, fear, and other damages.

48) Defendants' conduct was intentional and premeditated, intended to unjustly benefit Defendants at the expense of Plaintiffs, entitling Plaintiffs to punitive damages in an amount sufficient to deter these Defendants and others similarly situated from repeating or committing the wrongful acts complained of herein, but in no event less than $5,000,000 each.

## COUNT TWO
(Civil Conspiracy against All Defendants)

49) Plaintiffs reallege all allegations heretofore set forth.

50) Defendants agreed among themselves to engage in a course of conduct involving a violation of the common law tort of abuse of process.

51) Defendants agreed to accomplish an unlawful purpose or to accomplish a lawful object by unlawful means, causing damages to Plaintiffs.

52) As a proximate result of Defendants' civil conspiracy acts, Plaintiffs have suffered harm and attorneys' fees for the sum of $22,000 and loss of time, pain, suffering, fear, and other damages.

53) Defendants' conduct was intentional and premeditated, intended to unjustly benefit Defendants at the expense of Plaintiffs, entitling Plaintiffs to punitive damages in an amount sufficient to deter these Defendants and others similarly situated from repeating or committing the wrongful acts complained of herein, but in no event less than $5,000,000 each.

## REQUEST FOR TRIAL BY JURY

54) Plaintiffs request a trial by jury on all issues triable by jury.

## RELIEF SOUGHT

Plaintiff prays for relief as follows:

a) For judgment in the amount not less than $22,000 for damages proximately caused by Defendants to be proven at trial;

b) For damages for loss of time, pain, suffering, fear, and other damages as reasonably determined by a jury, but in no event less than $500,000;

c) For punitive damages for a sum to be proven at trial, but in no event less than $5,000,000 for each Defendant;

d) For judgment for costs and fees incurred in connection with this action, including reasonable attorneys' fees, expert witness fees, and other costs, as provided by law; and,

e) For such other and further relief as the Court may deem just and proper.

RESPECTFULLY SUBMITTED this 26th Day of March, 2009.

                                                                      THE LAW FIRM OF PETER STROJNIK

                                                                      _____
                                                                      Peter Kristofer Strojnik
                                                                      Attorney for Plaintiffs